Argued March 10, affirmed March 24, 1977

EVENHUS, *Appellant,*
*v.*
GREAT WESTERN UNITED
CORPORATION et al, *Respondents.*
(No. 404-967, SC 24570)

562 P2d 166

Vincent G. Ierulli, Portland, argued the cause and filed a brief for appellant.

Norman F. Webb, of Webb & Shaw, Portland, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Bryson, Linde and O'Connell, Justices.

O'CONNELL, J. Pro Tempore.

**O'CONNELL, J.,** Pro Tempore.

This is an action for money had and received to recover money paid for the purchase of a parcel of land. The case was heard without a jury. Plaintiff appeals from a judgment for defendants.

In the fall of 1970, plaintiff went to the Portland office of defendant California City Realty Company to inquire about the purchase of land situated in California City, California. Plaintiff was introduced to the manager of the realty office, and thereafter discussed with Mary DiCenzo, one of the sales persons employed by California City Realty Co., the possibility of purchasing property in the California City development. California City was a planned community under development by a group of corporations, including defendants. Plaintiff first heard of the development from his father, who was enrolled in a real estate class at California City.[1] His father had previously purchased a lot in the development. Plaintiff indicated to Ms. DiCenzo that he might be a possible purchaser of a part interest in a 20-acre tract designated by Ms. DiCenzo.

In March, 1971, plaintiff and his future wife flew to California along with a group of potential purchasers to view the California City community. Mary DiCenzo accompanied the group and showed plaintiff around the development. Leaving the group, Mary DiCenzo took plaintiff and his fiancee on a special trip to view the parcel in which plaintiff had shown an interest.

Plaintiff returned to Oregon and later decided to purchase a three-tenths interest. He informed Ms. DiCenzo of his decision and paid for his interest with a check made payable to California City Realty Company for the sum of $12,810. Immediately after signing the check, and as a part of the same transaction, at Ms. DiCenzo's request plaintiff made the following

---

[1] Although plaintiff testified that his father was taking a real estate class "at California City," it is possible that he meant that the classes were held at California City Realty Company's office in Portland.

notation on the face of the check: "To be signed over to Venture I." Up until this time plaintiff had not been informed how the transaction was to be arranged. At the time he wrote the check, plaintiff read and signed a document entitled "Purchase Agreement Among Tenants in Common." This agreement stated that Ms. DiCenzo and a Mr. Heppner were the "sellers" of the property and that the partners were to take undivided interests in the property. The instrument also stated that title would be taken in each partner's name.

Plaintiff testified that Ms. DiCenzo told him that she owned the property and that she had bought it from California City. Plaintiff also testified that he knew that DiCenzo and Heppner made up Venture I. The testimony relating to the foregoing was as follows:

"Q  * * * I noticed on the face of * * * Exhibit 1, which was your check for $12,810, Mr. Evenhus, what does it say at the bottom left-hand corner of that check?

"A  'To be signed over to Venture I.'

"Q  Did you write that on the check? Is that your handwriting?

"A  Yes, I believe so.

"Q  Did you write that on the check prior to the time that you handed it over to someone else or anyone else?

"A  I believe at the same time when I had asked who to make the check out to. When she said California City Realty Company, and then I believe she said that at the same time.

"Q  She asked you to add the language 'To be signed over to Venture I' at the bottom of that check?

"A  I believe so.

"Q  On the back of it, what does it show occurred with regard to that check?

"A  Payable to Venture I, California City, Donald M. Skiles, Venture I, by Mary Angela DiCenzo.'

"Q  And did that check then come back to you, having been deposited to Venture I's account?

"A  I don't know where it was deposited.

"Q  You got it back with an endorsement?

"A  Yes.

"Q  Does it have a bank stamp indicating where it was deposited?

"A  Let's see. U.S. National Bank of Oregon.

"* * * * *

"THE COURT: When you placed on the front of your check, this Exhibit Number 1, these words: 'To be signed over to Venture I,' did you ask about Venture I and what it was?

"THE WITNESS: Well, I could explain. The first time I had heard about this Venture I was that day when she signed—had me sign the three lines on the bottom there.

"THE COURT: Well, did you ask or did you have any—what conversations did you have with her about Venture I?

"THE WITNESS: None, really, I didn't, you know, get into how or the particulars of what or how they were selling the land. Venture I could be a—you know, something like a subdivision. I don't know. I didn't even—(pause)

"THE COURT: So you wrote that in your check, you are telling me, without really knowing why you wrote it on there, with no explanation as to why it's on there?

"THE WITNESS: Well, you know, when she said to make it out to California City Realty, I assumed that it was—(pause)

"THE COURT: As a matter of fact, didn't you know that Venture I was made up of two people, namely, Mary Ann DiCenzo and Edwin Heppner?

"THE WITNESS: Well, I found out about that at the time of the check to Venture I.

"THE COURT: When you gave them the check?

"THE WITNESS: Yes.

"THE COURT: In other words, when you gave this check, which is Exhibit 1, that is, when you executed the check, you were told Venture I was Mary Ann DiCenzo and Edwin Heppner?

"THE WITNESS: Basically. Now, I don't know if it was in so many words, but—

"THE COURT: All right, Okay."

After plaintiff gave his check to Ms. DiCenzo, he made several efforts to obtain a deed naming him as an owner in the parcel purported to have been sold to

him, but he was unsuccessful in obtaining the deed or in getting any information from defendants or anybody else concerning his interest in the property. Having failed in these attempts, plaintiff instituted this action for return of his money.

Plaintiff's case must rest upon proof that Mary DiCenzo was the agent for one or more of the defendants from whom he seeks to recover the purchase money paid by him at the time he signed the Purchase Agreement. The evidence clearly establishes that Mary DiCenzo was the agent of defendant California City Realty Company. It is also clear that for the most part the setting and the manner in which the sale was made had all the appearances attending a sale made by a real estate agent employed by a broker. But the agency relationship is negated by other evidence showing that plaintiff was aware of the fact that DiCenzo and Heppner were selling a part of their interest in the California City development. As indicated in the recital of the facts above, at the time plaintiff made the check payable to California City Realty Company he knew that DiCenzo owned the land. Plaintiff's testimony on cross-examination establishes this fact unequivocally. He admitted that DiCenzo informed him that she "owned the land," having "bought it from California City" and that "she was getting partners to help her defray the costs." Plaintiff's testimony on cross-examination was as follows:

"Q   Do you remember the deposition * * * we took in Portland on the 6th day of February, 1975, where I asked you the question:

'Q:   What had your dad previously told you about this land?

* * * * *

'[A]   Nothing, other than it was in California City, and he told me a little history about the land development, said that she [Ms. DiCenzo] had this twenty-acre parcel and she wanted partners for it.

'* * * * *'

"Q (by Mr. Webb) Do you remember also that I asked you * * *:

'Q: Did she indicate who was the seller of this property?

'A: Well, she told me that she owned the land. She bought it from California City, and that she was getting partners to help her defray the cost.'

"Do you recall that answer?

"A I believe so.

"Q Do you recall on Page 9 of the deposition, Line 2:

'Q: But what you understood she was selling you, was her own property and not the property that was being sold by California City to you?'

"And your answer was: 'Right.'

"Was that your answer?

"A If it's there, yes.

"Q And is that correct what you told me at that time?

"A Well, I believe from that, too, I was getting a little confused and a little farther, I answered it a little differently because I hadn't assumed that—well, I assumed that she was acting as if I were to buy a home and you were the real estate agent. And that's what I thought it was.

"She was looking for the people to buy into this twenty-acre parcel.

"Q Into the joint venture or the Venture I, was she not?

"A Well, the joint Venture I, I found out that day of the check. There was no mention as to any Venture I or anything."

The Purchase Agreement designated DiCenzo and Heppner as "sellers" and plaintiff was aware that the sellers made up what was called "Venture I." As we have noted, when he signed the check payable to California City Realty Company he, at the same time, designated on the face of the check that it was "to be signed over to Venture I."

If plaintiff had not so unequivocally admitted that he knew the foregoing facts, it could be strongly argued the defendants had created the appearance of

an agency relationship and that the defendants would be bound to account for the amount paid by plaintiff to their ostensible agent. But having made the admissions that he did, we are unable to see how plaintiff can now contend that he was misled as to the ownership of the property and the relationship between defendants and DiCenzo.

Judgment affirmed.